IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Tenant Union
Representative Network,

     Petitioner

   v.

Pennsylvania Public Utility
Commission,

     Respondent

:
:
:
:
:
:
:
:  No. 10 C.D. 2023
:  Argued: November 6, 2023
:
:
:
:
:

BEFORE:  HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE MICHAEL H. WOJCIK, Judge
      HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK          FILED:  April 2, 2024

    The Tenant Union Representative Network (TURN) petitions for review of the December 8, 2022 order of the Pennsylvania Public Utility Commission (PUC) denying the Exceptions to the Administrative Law Judge's (ALJ) Initial Decision; adopting the ALJ's Initial Decision, without modification; and dismissing TURN's Formal Complaint (Complaint). TURN argues that the PUC erred or abused its discretion by failing to enforce its prior orders; failing to apply contract principles when interpreting a settlement agreement; concluding that TURN failed to meet its burden of proof of showing unreasonable service; excusing

a public utility's nonperformance; and disregarding substantial evidence. Upon review, we affirm.

## I. Background

PECO Energy Company (PECO) is a public utility that provides both electric and natural gas distribution services to customers in southeastern Pennsylvania. PECO provides a Customer Assistance Program (CAP) to help low-income customers afford utility service as required by the Public Utility Code (Code).[1] *See* 66 Pa. C.S. §§1403, 1410.1, 2203, 2207(b), 2802(10), 2804(9). A CAP is part of each utility's Universal Service and Energy Conversation Plan (USECP) aimed to help its residential low-income customers maintain gas and electric services. 66 Pa. C.S. §§2202 and 2803 (definitions of "universal service and energy conservation");[2] *see* 52 Pa. Code §§54.73, 54.74, 62.3, and 62.4 (relating to universal service and energy conservation program goals and plans).

---

[1] 66 Pa. C.S. §§101-3316.

[2] Section 2202 of the Code, pertaining to natural gas service, defines "universal service and energy conservation" as follows:

> Policies, practices and services that help residential low-income retail gas customers and other residential retail gas customers experiencing temporary emergencies, as defined by the commission, to maintain natural gas supply and distribution services. The term includes retail gas customer assistance programs, termination of service protections and consumer protection policies and services that help residential low-income customers and other residential customers experiencing temporary emergencies to reduce or manage energy consumption in a cost-effective manner, such as the low-income usage reduction programs and consumer education.

66 Pa. C.S. §2202. Section 2803 of the Code, pertaining to electric service, similarly defines the term as:

**(Footnote continued on next page…)**

On February 28, 2012, PECO submitted its proposed USECP for the years 2013 through 2015 (2013-2015 USECP), which it amended on October 15, 2012, to the PUC for review and approval. The development of a USECP is a complex process. The PUC's guidelines on CAPs direct that utilities should file a CAP proposal with the PUC before implementing, revising, or expanding a CAP to allow for staff review, comments, discovery, and revisions prior to PUC approval. *See* 52 Pa. Code §69.263(c). The PUC's regulations require periodic evaluation and re-evaluation of CAP designs to ensure that the programs are effective in terms of assisting low-income customers and in terms of cost effectiveness. *See* 52 Pa. Code §54.76 (evaluation reporting requirements); 52 Pa. Code §62.6 (requiring an independent third-party evaluation of USECPs at least every six years). When reviewing a utility's USECP, the PUC seeks to balance the interests of the low-income customers who benefit from these programs with the interests of the non-CAP customers who pay for them by ensuring the programs are operated in a cost-effective and efficient manner. PUC Opinion, 12/8/22, at 19-20; *see* 52 Pa. Code §§54.73, 62.3. The PUC routinely seeks input from stakeholders in the USECP proceeding. *See* 52 Pa. Code §69.263.

---

Policies, protections and services that help low-income customers to maintain electric service. The term includes customer assistance programs, termination of service protection and policies and services that help low-income customers to reduce or manage energy consumption in a cost-effective manner, such as the low-income usage reduction programs, application of renewable resources and consumer education.

66 Pa. C.S. §2803.

PECO, TURN,[3] the Pennsylvania Office of Consumer Advocate (OCA), and the Coalition for Affordable Utility Services and Energy Efficiency in Pennsylvania (CAUSE-PA) participated as parties in the 2013-2015 USECP proceeding. On March 20, 2015, following extensive settlement discussions, the parties filed a Joint Petition for Settlement, which included the "PECO CAP Mediation Settlement Term Sheet" (2015 Settlement Agreement). The 2015 Settlement Agreement proposed to change the design of PECO's CAP from a seven-tier rate program to a Fixed Credit Option Percentage of Income Program (FCO). Under the FCO, CAP customers would receive credit based on their energy usage in the prior year, household income, and allowable "energy burden," which is a maximum percentage of the customer's income that is considered to be an affordable energy bill.

The 2015 Settlement Agreement included "Table 1," which identified the then-applicable maximum energy burden percentages for three household income tiers:

| [Federal Poverty Level (FPL)] | Electric Non-Heating | Electric Heating | Electric with Gas Heating |
|---|---|---|---|
| 0-50% | 5% | 13% | 13% |
| 51-100% | 6% | 16% | 16% |
| 101-150% | 7% | 17% | 17% |

Reproduced Record (R.R.) at 973a (footnotes omitted). With respect to Table 1, and of particular import here, the 2015 Settlement Agreement included Footnote 3, which provides:

> The table is based upon the ranges found at 52 Pa. Code
> §69.265(2)(i)(A). In each case, the energy burden listed

---

[3] TURN is a 30-year-old Pennsylvania nonprofit corporation, dedicated to advancing and defending the rights of tenants and homeless people. Reproduced Record (R.R.) at 834a.

4

in the table is the maximum allowable energy burden for that poverty level. *If the [PUC] changes the energy burden ranges set forth in its Policy Statement, PECO will utilize the new maximum allowable energy burden for each poverty level.*

*Id*. at 972a (emphasis added). The meaning of Footnote 3, particularly, whether it is self-executing, is the center of this litigation.

The 2015 Settlement Agreement also outlined procedures for evaluating the effectiveness of the FCO in achieving affordability. Specifically, PECO agreed to operate the FCO program for two years, collect data from those two years of operations, have an independent evaluator, Applied Public Policy Research Institute for Study and Evaluation (APPRISE), assess the program using that data, and submit the evaluation report (APPRISE Evaluation) to the PUC and the parties to the 2015 Settlement Agreement by June 2019. *See* R.R. 461a-62a; 836a; 979a.

The Joint Petition for Settlement was assigned to an ALJ for review and decision. Each party separately submitted Statements in Support of the 2015 Settlement Agreement. R.R. at 964a. Notably, none of the Statements in Support included discussion of Footnote 3. ALJ Initial Decision, 4/9/21, Finding of Fact (F.F.) No. 12; R.R. 835a; *see also* PUC Opinion, 12/8/22, at 26; R.R. at 367a-78a, 1005a-20a.

On June 11, 2015, the ALJ issued a Recommended Decision, approving the 2015 Settlement Agreement without modification. ALJ Recommended Decision, 6/11/15, at 1-36; R.R. at 1037a-72a. On July 8, 2015, the PUC entered an Order adopting the ALJ's Recommended Decision (PUC Settlement Order). PUC Settlement Order, 7/8/15, at 1-2; R.R. at 1073a-74a. Following PUC approval of the 2015 Settlement Agreement, PECO incorporated the CAP FCO into its USECP for 2016-2018 (2016-2018 USECP), which the PUC also approved. *See* PUC 2016-

5

2018 USECP Approval Order, 8/11/16, at 73-74; R.R. at 1188a-89a.  In October 2016, PECO launched the CAP FCO program.

On June 28, 2019, PECO filed the APPRISE Evaluation, which showed that during calendar years 2017 and 2018, approximately 80% of customers with household income at or below 50% of the FPL received unaffordable bills under the FCO and would continue to receive unaffordable bills.  As a result of the APPRISE Evaluation, PECO launched an investigation into the causes of the unaffordable bills received by customers at or below 50% of the FPL.  It then began to develop, in consultation with the other settling parties, preliminary recommendations to improve the FCO.

Meanwhile, by Final Policy Statement and Order dated November 5, 2019 (2019 Final CAP Policy Statement), the PUC adopted amendments to its CAP Policy Statement.  Notably, the PUC revised its energy burdens by reducing the maximum allowable energy burden thresholds for low-income households as follows:

| FPL | Electric Non-Heating | Electric Heating | Electric with Gas Heating |
| --- | --- | --- | --- |
| 0-50% | 2% | 6% | 6% |
| 51-100% | 4% | 10% | 10% |
| 101-150% | 4% | 10% | 10% |

PUC Opinion, 12/8/22, at 5.  The 2019 Final CAP Policy Statement was published in the Pennsylvania Bulletin on March 21, 2020.  50 Pa. B. 1652 (2020).

Days later, on March 26, 2020, PECO filed a letter notifying the PUC that it would file a single USECP update to its proposed 2019-2024 USECP to address both the 2019 Final CAP Policy Statement and the ineffectiveness of the FCO in achieving affordability.  PECO advised that this update would incorporate

6

the PUC's new maximum energy burdens and redesign the CAP. *See* PUC Opinion, 12/8/22, at 30; *see also* R.R. 462a-63a, 466a-69a; 838a; 1612a-14a.

PECO then held a series of calls with stakeholders, including TURN and CAUSE-PA, in which PECO presented its analysis and proposed different alternatives for revising its CAP. Some alternatives retained the CAP FCO framework, while others involved a transition to a percentage of income payment plan (PIPP). PECO projected that each alternative would increase annual universal service costs by $11 million to $15 million. PECO's analysis also showed that simply incorporating the revised energy burdens into the FCO would not make energy bills more affordable but would significantly increase the costs of universal service programs to be recovered from all non-CAP customers. PECO ultimately decided to discontinue the FCO model in favor of the PIPP model in which CAP customers would receive a credit based on their annual income and a modified version of the PUC's updated energy burdens. R.R. at 468a-69a, 476a-91a; 839a. PECO continued to operate the FCO under the terms of its 2016-2018 USECP and the energy burdens set forth in Table 1 of the 2015 Settlement Agreement, not the revised energy burdens in 2019 Final CAP Policy Statement. On September 25, 2020, PECO filed a petition to amend its proposed 2019-2024 USECP to permit the use of the new energy burdens as part of the CAP FCO during the transition from the FCO to PIPP. *Id*. at 1471a-611a. By order dated June 16, 2022, the PUC approved PECO's amended 2019-2024 USECP and the transition to PIPP.

Although TURN and CAUSE-PA both supported the transition to the PIPP model, they contended that Footnote 3 of the 2015 Settlement Agreement was self-executing and required PECO to immediately apply the new energy burdens

7

with the FCO without any additional PUC review process or approval. PECO disagreed.

On August 25, 2020, TURN filed its Complaint against PECO asserting that PECO violated the terms of the 2015 Settlement Agreement. Specifically, TURN claimed that PECO failed to (1) implement the lower energy burden thresholds adopted by the PUC in the 2019 Final CAP Policy Statement, or (2) recalculate the CAP benefit for participating customers. According to TURN, Footnote 3 of the 2015 Settlement Agreement was self-executing and required PECO to immediately and automatically implement the revised energy burdens in the FCO calculations without further review or approval by the PUC.

TURN's Complaint was assigned to an ALJ for review and decision. OCA and CAUSE-PA intervened. Upon consideration of the evidence and the parties' briefs, on April 9, 2021, the ALJ issued her Initial Decision. ALJ Initial Decision, 4/9/21, at 1-24; R.R. at 829a-53a. The ALJ found that the language of Footnote 3 to the 2015 Settlement Agreement did not require PECO to (1) automatically implement the revised energy burden thresholds from the PUC's 2019 Final CAP Policy Statement, or (2) recalculate the CAP benefit for the affected customers. The ALJ explained that, in order for TURN's interpretation of Footnote 3 to be reasonable, the following words would need to be added:

> If the Commission changes the energy burden ranges set forth in its Policy Statement, *immediately, upon entry of a final order of the* [*PUC*] *revising the Policy Statement*, PECO will utilize the new maximum allowable energy burden for each poverty level, *without seeking further approval by the* [*PUC*].

ALJ Initial Decision, 4/9/21, at 20 (emphasis in original); R.R. at 849a. Furthermore, the ALJ found that no persuasive extrinsic evidence supported

8

TURN's interpretation. As such, the ALJ determined that PECO had met its burden of establishing that it had complied with the terms of the 2015 Settlement Agreement, the PUC Orders approving the terms of the Settlement Agreement, and the terms of its tariff. Further, the ALJ determined that TURN failed to meet its burden of proving that PECO provided unreasonable service in the administration of the 2016-2018 USECP. Accordingly, the ALJ recommended the dismissal of TURN's Complaint. ALJ Initial Decision, 4/9/21, at 24; R.R. at 853a.

In response, TURN and CAUSE-PA filed Exceptions to the ALJ's Initial Decision to which PECO and the OCA replied. By decision dated December 8, 2022, the PUC denied the Exceptions filed by TURN and CAUSE-PA; adopted, without modification, the ALJ's Initial Decision; and dismissed TURN's Complaint. PUC Opinion, 12/8/22, at 7, 42-43. The PUC similarly concluded that (1) Footnote 3 did not require PECO to automatically adopt the revised energy burdens from the 2019 Final CAP Policy Statement or recalculate CAP customers' bills; (2) PECO demonstrated substantial compliance with the terms of the 2015 Settlement Agreement; and (3) TURN did not meet its burden of proving that PECO violated the terms of the 2015 Settlement Agreement.

In support, the PUC found that adjustments to CAPs without PUC review are neither advisable nor expressly contemplated by the PUC's regulations, noting that "the extensive review and stakeholder collaboration process undertaken regarding USECP plans dictates otherwise." PUC Opinion, 12/8/22, at 7. The PUC also noted that its June 16, 2022 Order, approving PECO's amended 2019-2024 USECP and transition from FCO to PIPP, identified substantial efforts PECO undertook to adjust its 2016-2018 USECP to address the impact on its lowest income customers. In addition, the PUC found that the 2015 Settlement Agreement and

9

PECO's 2016-2018 USECP reflect PECO's ongoing efforts to address the energy needs of its lowest income consumers. PUC Opinion, 12/8/22, at 7.

In reviewing PECO's compliance with the terms of the 2015 Settlement Agreement, the PUC considered the language of the 2015 Settlement Agreement and 2016-2018 USECP. Since the overarching goal of the 2015 Settlement Agreement was to implement a CAP that improved bill affordability, the PUC considered the documented issues with unaffordable bills under PECO's FCO model. The PUC also considered "the various overlapping PUC processes and directives which resulted in PECO having arguably competing obligations." PUC Opinion, 12/8/22, at 17.

Critically, the PUC found that the plain language of Footnote 3 did not establish a timeframe for PECO to implement the revised energy burden thresholds. The PUC agreed with the ALJ's rationale that TURN's interpretation of Footnote 3 would require additional words to be inserted into Footnote 3 to identify a set time in which PECO had to implement the updated energy burdens, without seeking PUC approval. PUC Opinion, 12/8/22, at 22. As to the parties' intent, the PUC rejected TURN's claim that Footnote 3 was central to its agreement because TURN's own Statement in Support of the 2015 Settlement Agreement made no mention of Footnote 3 or its self-executing interpretation. PUC Opinion, 12/8/22, at 26; *see* R.R. at 367a-78a.

The PUC further found that PECO substantially complied with the 2015 Settlement Agreement by taking affirmative steps to improve customer bill affordability. The PUC explained that PECO:

> • proposed a new CAP and made filings following the PUC's 2019 Final CAP Policy Statement;

10

• worked in a transparent manner to improve bill affordability for all CAP customers after receiving the APPRISE Evaluation; and

• complied with the PUC's directives by filing its Amended USECP to both replace the CAP FCO and PIPP and incorporate several of the PUC's revised energy burdens.

PUC Opinion, 12/8/22, at 30.

The PUC also found that PECO substantially complied with its 2016-2018 USECP, based on the same reasons noted above supporting the PUC's conclusion that PECO had complied with the terms of the 2015 Settlement Agreement. PUC Opinion, 12/8/22, at 32. Having determined that PECO substantially complied with the terms of both the 2015 Settlement Agreement and its 2016-2018 USECP, the PUC further concluded that TURN did not meet its burden of establishing that PECO rendered "unreasonable service" in violation of Section 1501 of the Code, 66 Pa. C.S. §1501. *Id*. at 33.

Finally, the PUC rejected TURN's allegation that the ALJ erred by not directing PECO to retroactively recalculate CAP bill credits for CAP customers. The PUC concluded that relief in the form of bill credits was not warranted since the PUC found that (1) Footnote 3 did not require PECO to immediately adopt the revised maximum energy burden thresholds, and (2) PECO complied with the terms of both the 2015 Settlement Agreement and its 2016-2018 USECP. PUC Opinion, 12/8/22, at 42. Accordingly, the PUC dismissed TURN's Complaint. From this

11

decision, TURN filed the Petition for Review now before us.[4]  PECO, OCA, and CAUSE-PA have intervened.[5]  All parties have filed briefs.[6]

## II. Issues

TURN raises five issues for our review.  First, TURN argues that the PUC erred by failing to enforce its prior orders adopting the 2015 Settlement Agreement.  Second, TURN contends that the PUC erred by failing to apply contract principles to interpret the 2015 Settlement Agreement, as required by Pennsylvania law, when it concluded that Footnote 3 did not require PECO to automatically implement the revised energy burdens in its 2019 Final CAP Policy Statement or recalculate CAP customers' benefits based on those revised energy burdens.  Third, TURN claims that the PUC erred by concluding that PECO met its burden of proof while TURN did not.  Fourth, TURN asserts that the PUC abused its discretion by excusing PECO's nonperformance of its specific obligation pursuant to Footnote 3 based on a finding that PECO "substantially complied" with other provisions of the 2015 Settlement Agreement.  Finally, TURN contends that the PUC disregarded competent evidence in holding that Footnote 3 was not central to TURN's agreement

---

[4] Our review is limited to determining whether (1) a constitutional violation or error in PUC procedure has occurred; (2) the decision is in accordance with law; and (3) the necessary findings of fact are supported by substantial evidence.  Section 704 of Administrative Agency Law, 2 Pa. C.S. §704; *PECO Energy Co. v. Pennsylvania Public Utility Commission*, 791 A.2d 1155, 1160 (Pa. 2002).  On issues of law, "our standard of review is *de novo,* and our scope of review is plenary." *Department of Environmental Protection v. Cumberland Coal Resources*, LP, 102 A.3d 962, 970 (Pa. 2014).

[5] CAUSE-PA aligns with TURN and adopts and incorporates the arguments made, and relief requested, in TURN's brief; PECO and OCA align with the PUC.

[6] Although the parties each filed separate briefs, their arguments overlap.  To avoid redundancy, similar arguments are grouped together unless otherwise indicated.

to the 2015 Settlement Agreement where the unrebutted testimony of its witness established that Footnote 3 was material to TURN's entry into the Settlement. We address each issue in turn.

### III. Discussion
### A. Enforcement of Prior Orders
### 1. Contentions
### a. TURN's and CAUSE-PA's Position

First, TURN and CAUSE-PA argue that the PUC failed to enforce its prior orders. Footnote 3 is included as a term in the 2015 Settlement Agreement, as well as in Addendum B to PECO's 2016-2018 USECP. The PUC approved Footnote 3 twice – once in the 2015 Settlement Order and again in the 2016-2018 USECP Approval Order. According to TURN and CAUSE-PA, Footnote 3 is self-executing and required PECO to automatically update the energy burdens in its CAP FCO calculation upon the PUC's adoption of the revised energy burdens in the 2019 Final CAP Policy Statement. PECO failed to automatically implement those updated energy burdens or recalculate CAP customers' FCO credits. By excusing PECO's noncompliance, the PUC failed to enforce a key term of its prior orders. In addition, CAUSE-PA posits that the PUC's failure to enforce Footnote 3 will have broad and negative repercussions on subsequent settlement provisions that come before the PUC for approval.

### b. PUC's, PECO's, and OCA's Position:

The PUC, PECO, and OCA respond that the PUC did not fail to enforce its prior orders. Rather, the PUC interpreted Footnote 3 differently than TURN. The PUC's interpretation of its own orders is entitled to deference. According to the PUC, Footnote 3 is not self-executing and does not require PECO to automatically

implement the undated energy burdens. TURN's interpretation runs contrary to PUC policy and regulations because it would permit PECO to bypass the PUC review and approval. The plain language of Footnote 3 reflects PECO's obligation to seek the PUC's review and approval of any modifications to PECO's CAP pursuant to the 2019 Final CAP Policy Statement. As for CAUSE-PA's negative repercussion argument, this argument is based on the erroneous assertion that the PUC modified the terms of the 2015 Settlement Agreement. The PUC simply interpreted Footnote 3 differently than TURN and CAUSE-PA.

## 2. Analysis

The PUC has the authority to enforce its own orders. 66 Pa. C.S. §502. The PUC "is peculiarly fitted to interpret *its own orders*" and a reviewing court cannot overturn the PUC's interpretation "unless the result is clearly erroneous, arbitrary, and unsupported by evidence." *Pittsburgh-Johnstown-Altoona Express, Inc. v. Pennsylvania Public Utility Commission*, 554 A.2d 137, 144 (Pa. Cmwlth. 1989) (emphasis added).

The question of whether the PUC failed to enforce its prior orders depends on the interpretation of Footnote 3. Although Footnote 3 is incorporated in the PUC's orders, it was drafted, and agreed to, by the settling parties to the 2015 Settlement Agreement. The PUC did not modify this term. Although the PUC is ordinarily accorded deference in the interpretation of its orders, we must interpret Footnote 3 in accordance with the principles of contract construction, which we address next. *See Waggle v. Woodland Hills Association, Inc.*, 213 A.3d 397, 405-06 (Pa. Cmwlth. 2019) (holding principles of interpretation of contracts are appropriate for interpreting the language of settlement agreements).

14

## B. Contract Principles
### 1. Contentions
#### a. TURN's and CAUSE-PA's Position

The PUC erred by failing to apply contract principles to interpret the 2015 Settlement Agreement when it held that Footnote 3 did not establish a duty for PECO to immediately implement the revised energy burdens as adopted by the PUC in its 2019 Final Cap Policy Statement and recalculate CAP customers' FCO credits based on them. Settlement agreements must be interpreted pursuant to contract principles, with the goal of giving effect to the settling parties' intentions. That intent is clearly and unambiguously expressed in the language of Footnote 3, the context of the 2015 Settlement Agreement, and the USECP process. Footnote 3 creates a condition precedent. It triggers an automatic change to PECO's CAP when an external event occurs – the PUC changes the energy burdens in its CAP Policy Statement. There is no alternate reading that removes PECO's obligation to act once the condition precedent is met.

#### b. PUC's, PECO's, and OCA's Position

The PUC, PECO, and OCA reply that the PUC properly employed the principles of contract interpretation in determining that Footnote 3 is not a self-executing clause. The 2015 Settlement Agreement speaks for itself and cannot be given a meaning other than that expressly stated therein. Footnote 3 is unambiguous. Footnote 3 fixes no time in which PECO must act to recalculate the CAP benefit based upon a PUC-approved revision to the existing energy burdens. TURN's interpretation is based on language that is simply not there, that is, language directing PECO to immediately and automatically implement the revised energy burden thresholds without seeking PUC approval. Furthermore, TURN's interpretation runs contrary to the PUC's standard processes and procedures for reviewing and

15

approving modifications to CAPs by completely bypassing the PUC's oversight and omitting any stakeholder input. The PUC's oversight is necessary because the PUC must balance the interests of customers who benefit from the programs with the interests of customers who pay for those programs. Affordable utility bills to low-income customers cannot come at an unreasonable cost to utility ratepayers, including low-income customers who do not participate in universal service programs. Finally, neither TURN nor CAUSE-PA provided any notice to the ALJ or the PUC that it intended for Footnote 3 to be self-executing at the time of settlement. For these reasons, the PUC properly concluded that Footnote 3 did not require PECO to automatically implement the revised energy burdens and recalculate CAP benefits without further PUC review and approval.

## 2. Analysis

A settlement agreement is a contract that must be interpreted in accordance with the principles of contract construction. *DeLuca v. Mountaintop Area Joint Sanitary Authority*, 234 A.3d 886, 898 (Pa. Cmwlth. 2020). In interpreting the meaning of a settlement agreement, "the document must 'speak for itself' and cannot be given a meaning other than that expressly stated within the agreement itself." *Oakmont Presbyterian Home v. Department of Public Welfare*, 633 A.2d 1315, 1320 (Pa. Cmwlth. 1993). A court cannot rewrite a contract for the parties. *Steuart v. McChesney*, 444 A.2d 659, 662 (Pa. 1982). A court can only interpret the contract the parties made for themselves "without regard to its wisdom or folly." *Id.*

As our Supreme Court explained:

The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the

16

parties. Specifically, the intent of the parties to a contract is to be regarded as embodied in the writing itself, and, as such, the entire agreement must be taken into account in determining contractual intent. Indeed, a reviewing court does not assume that contractual language is chosen carelessly, nor does it assume that the parties were ignorant of the meaning of the language they employed; thus, when a writing is clear and unequivocal, its meaning must be determined only by its terms. Related thereto, before a court will interpret a provision in a statute or in a contract in such a way as to lead to an absurdity or make the statute or contract ineffective to accomplish its purpose, it will endeavor to find an interpretation which will effectuate the reasonable result intended.

*Binswanger of Pennsylvania, Inc. v. TSG Real Estate LLC*, 217 A.3d 256, 262 (Pa. 2019) (internal citations and quotations omitted).

"If, however, the contractual terms are ambiguous," the courts may "resort to extrinsic evidence to ascertain their meaning . . . ." *Commonwealth by Shapiro v. UPMC*, 208 A.3d 898, 909-10 (Pa. 2019) (citation and quotation omitted). "A contract's terms are considered ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Id*. at 910 (citation and quotation omitted). The fact that the parties disagree on the proper construction of a contract does not render it ambiguous. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Big D Restaurants, LLC*, 149 A.3d 890, 899 (Pa. Cmwlth. 2016).

The focal point of our inquiry is Footnote 3 of the 2015 Settlement Agreement, which provides:

> The table is based upon the ranges found at 52 Pa. Code §69.265(2)(i)(A). In each case, the energy burden listed in the table is the maximum allowable energy burden for that poverty level. *If the* [*PUC*] *changes the energy burden ranges set forth in its Policy Statement, PECO will*

*utilize the new maximum allowable energy burden for each poverty level.*

R.R. at 972a (emphasis added). The PUC properly employed the principles of contract interpretation in determining that the language of Footnote 3 is unambiguous based on its plain language. Although Footnote 3 contains a condition precedent, meaning an event must occur – the PUC's adoption of revised energy burdens – before PECO is obligated to act, it does not specify a timeframe for PECO to act. Where time of performance is not specified in an agreement, the law is well settled that a reasonable time is implied. *Field v. Golden Triangle Broadcasting, Inc.*, 305 A.2d 689, 694 (Pa. 1973); *Lefkowitz v. Hummel Furniture Company*, 122 A.2d 802, 804 (Pa. 1956); *L.C.S. Colliery, Inc. v. Globe Coal Co.*, 84 A.2d 776, 782 (Pa. 1952); *Marshall Construction Co. v. Forsyth*, 57 A.2d 902, 902 (Pa. 1948); *Hutchinson v. Pennsylvania State Employes' Retirement Board*, 738 A.2d 7, 16 (Pa. Cmwlth. 1999); *see also Frechie v. Boyd*, 100 Pa. Super. 553, 557 (1930); Restatement (Second) of Contracts §204. Because the 2015 Settlement Agreement did not fix a time or include language of immediacy for PECO to implement the new energy burdens, PECO was required to input the new energy burdens within a reasonable time.

Furthermore, TURN's interpretation of an automatic adjustment without affording the PUC an opportunity for review and approval is a departure from the PUC's standard operating procedure for modifications to a utility's CAP. *See* 52 Pa. Code §69.263(c).[7] The 2019 Final CAP Policy Statement itself directs

---

[7] Section 69.263(c) of the PUC's regulations governing CAP development provides:

> Before implementing, revising or expanding a CAP, a utility should file its CAP proposal with the [PUC] and serve copies on the Bureau of Consumer Services and on stakeholders from the utility's most

**(Footnote continued on next page…)**

18

the utility to file, for PUC approval, an addendum to its existing or proposed USECP to modify the terms of its CAP. 50 Pa. B. at 1680. Those addendums would reflect "anticipated timeframes for implementing changes to their USECPs predicated on the amended CAP Policy Statement." *Id.* Such a filing is necessary to afford all interested parties due process—notice of the proposed changes and an opportunity to be heard with respect to that proposal. *See id.* at 1652; *see also Evans v. Pennsylvania Public Utility Commission* (Pa. Cmwlth., No. 421 and 422 C.D. 2020, filed September 29, 2021) (*en banc*) (holding PUC's expedited review process did not afford interested parties with adequate notice and a meaningful opportunity to be heard).[8] Footnote 3 contains no express language deviating from the PUC's standard review and approval process.

Upon review, we reject TURN's interpretation of Footnote 3 because it not only runs contrary to the principles of contract construction, but it ignores the 2019 Final CAP Policy Statement, circumvents the PUC's normal CAP review and approval processes, and would otherwise violate interested parties' right to due process. Thus, we conclude that the PUC did not err in its interpretation of Footnote 3.

recent USECP proceeding. This will allow for staff review, comments, discovery and revisions prior to [PUC] approval of design elements. This review is not for ratemaking purposes, and the rate consequences of any CAP will be addressed within the context of subsequent [PUC] rate proceedings as described in [Section] 69.266 (relating to cost recovery).

52 Pa. Code §69.263(c).

[8] Unreported memorandum opinions of this Court filed after January 15, 2008, may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

## C. Burden of Proof
### 1. Contentions
#### a. TURN's and CAUSE-PA's Position

Next, TURN and CAUSE-PA argue that the PUC erred in concluding that PECO met its burden of proof, while TURN failed to meet its burden. Generally, a complainant seeking a determination from the PUC bears the burden of proof. However, in cases where the utility is alleged to be violating a lawful determination or order of the PUC, including orders approving settlement agreements, the burden of proof lies with the utility to show compliance. Therefore, PECO bore the burden to show compliance with the PUC orders while TURN bore the burden of proving unreasonable service. PECO failed to show compliance with the PUC's 2015 Settlement Order and 2016-2018 USECP Approval Order requiring PECO to automatically utilize the PUC's revised energy burdens per the 2015 Settlement Agreement. Such failure demonstrates unreasonable service.

#### b. PUC's, PECO's, and OCA's Position

The PUC, PECO, and OCA respond that the PUC assigned the proper burdens of proof and correctly concluded that PECO met its burden while TURN did not. As discussed above, Footnote 3 does not require PECO to immediately or automatically implement the revised energy burden thresholds from the PUC's 2019 Final CAP Policy Statement or recalculate the CAP benefit for the affected customers. As such, the PUC determined that PECO met its burden of establishing that it substantially complied with the terms of the 2015 Settlement Agreement, the 2015 Settlement Order, the 2016-2018 USECP Approval Order, and the terms of the tariff. TURN, as the complaining party, failed to satisfy its burden of proving otherwise by a preponderance of the evidence.

## 2. Analysis

Section 1501 of the Code provides:

> Every public utility shall furnish and maintain adequate, efficient, safe, and *reasonable service* and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public.

66 Pa. C.S. §1501 (emphasis added). A party complaining that the service is not reasonable bears the burden of proof. 66 Pa. C.S. §332(a); *Povacz v. Pennsylvania Public Utility Commission*, 80 A.3d 975, 999-1000 (Pa. 2022); *Samuel J. Lansberry, Inc. v. Pennsylvania Public Utility Commission*, 578 A.2d 600, 602 (Pa. Cmwlth. 1990). Such a showing must be by a preponderance of the evidence. *Povacz*; *Lansberry*. A preponderance of the evidence is tantamount to a "more likely than not" inquiry. *Povacz*, 80 A.3d at 1006. That is, a complainant's evidence must be "more convincing than, by even the smallest amount," the evidence presented by the respondent utility. *Id.* at 999 n.25.

In cases where a utility is alleged to be violating a lawful determination or order of the PUC, Section 315(b) of the Code provides that the burden of proof lies with the utility to show that it is in compliance. 66 Pa. C.S. §315(b). Section 315(b) of the Code naturally extends to PUC orders approving settlement agreements.

In this case, PECO bore the burden of showing compliance with the PUC's orders, and TURN bore the burden of showing that PECO provided unreasonable service. Upon review, the PUC applied the proper burdens. As to whether those burdens were met, TURN argues that PECO did not meet its burden

21

of proving compliance with Footnote 3. TURN also argues that it met its burden of unreasonable service based on PECO's failure to comply with Footnote 3. TURN's position rests entirely on the success of its interpretation of Footnote 3 -- that PECO was required to immediately and automatically implement the revised energy burdens without seeking further PUC review or approval. Having rejected TURN's interpretation of Footnote 3 above, we conclude that TURN's assignments of error regarding the burdens of proof likewise fail.

### D. Substantial Compliance
### 1. Contentions
### a. TURN's and CAUSE-PA's Position

Next, TURN and CAUSE-PA assert that the PUC erred or abused its discretion by excusing PECO's nonperformance of a specific obligation pursuant to Footnote 3 based on a finding that PECO "substantially complied" with other provisions of the 2015 Settlement Agreement. Neither compliance with other terms, nor implementation of a different program, excuses PECO's nonperformance of Footnote 3. PECO continued to overcharge CAP customers according to outdated energy burdens in violation of its 2015 Settlement Agreement and the 2016-2018 USECP, and PUC orders adopting and incorporating the same. PECO completely defied its obligation to immediately pass through lower energy burdens to its CAP customers. The PUC's determination of substantial compliance is manifestly unreasonable and constitutes an abuse of discretion. PECO's compliance with other terms of the 2015 Settlement Agreement is irrelevant.

### b. PUC's, PECO's, and OCA's Position

The PUC, PECO, and OCA reassert that Footnote 3 did not require PECO to automatically implement new energy burdens without PUC approval. The

overarching goal of the 2015 Settlement Agreement was to implement a CAP that improved bill affordability. PECO demonstrated substantial compliance with the terms and goals of the 2015 Settlement Agreement, including Footnote 3, by taking affirmative steps to improve customer bill affordability and apply the revised energy burdens going forward. PECO proposed a new CAP following the PUC's 2019 Final CAP Policy Statement, worked in a transparent manner to improve bill affordability for all CAP customers after receiving the APPRISE Evaluation, and complied with PUC directives by filing an amended USECP to apply the revised energy burdens. The PUC acknowledges that PECO confronted competing PUC directives regarding CAPs when it was proposing changes to its FCO.

## 2. Analysis

Once again, TURN's and CAUSE-PA's position regarding PECO's noncompliance is premised entirely on their interpretation of Footnote 3, which we have rejected. As discussed above, Footnote 3 did not impose a specific timeframe for PECO to implement the revised energy burdens. PECO was required to implement the revised energy burdens in a reasonable time. PECO substantially complied with the 2015 Settlement Agreement by taking affirmative steps to revise its CAP to implement the revised energy burdens in a reasonable time.

Specifically, on March 26, 2020, days after the PUC published the 2019 Final CAP Policy Statement in the Pennsylvania Bulletin, PECO sent a letter notifying the PUC that PECO was currently in the process of addressing the failure of its FCO to provide affordable energy bills as revealed by the APPRISE Evaluation. R.R. at 1075a-76a. PECO reaffirmed its commitment to address the affordability issues and incorporate the revised energy burdens. *Id*. at 1076a. In April and May of 2020, PECO held a series of calls with stakeholders, including

23

TURN, in which PECO stated its intention to stop using the FCO model and implement PIPP. *Id*. at 193a, 267a. PECO's analysis projected the implementation of the new energy burdens in the FCO CAP would not improve bill affordability for CAP customers but would significantly increase the amount of the universal service program costs paid by all residential ratepayers. *Id*. at 476a-91a. By letter dated June 30, 2020, PECO informed the PUC that it had been working closing with stakeholders and intended to file an amended 2019-2024 USECP shortly. *Id*. On July 8, 2020, PECO filed an amended 2019-2024 USECP, in which PECO proposed to transition from the FCO to PIPP to address the affordability issues with the FCO design. *Id*. at 194a, 267a. The amended 2019-2024 USECP incorporated many of the recommendations the PUC adopted in the 2019 Final CAP Policy Statement, including the revised energy burdens for customer groups in the 0%-50% and 51%-100% FPL income range. *Id*. at 934a. PECO submitted the amended 2019-2024 USECP for PUC's review and approval prior to implementing new energy burdens. *Id*. at 195a, 267a. On September 25, 2020, PECO filed a petition to further amend its proposed 2019-2024 USECP to permit the use of the new energy burdens during the transition to the new proposed CAP. *Id*. at 1471a-611a. Upon review, the PUC's findings that PECO demonstrated substantial compliance with the terms and goals of the 2015 Settlement Agreement including Footnote 3 are supported by substantial evidence.

### E. Substantial Evidence
#### 1. Contentions
##### a. TURN's and CAUSE-PA's Position

Finally, TURN and CAUSE-PA argue that the PUC's determination that Footnote 3 was not central to their entry into the 2015 Settlement Agreement is not supported by substantial evidence. TURN's and CAUSE-PA's witnesses

testified that they understood that PECO's CAP would automatically adjust if the PUC changed the energy burdens, and that this was a material term for them. The PUC capriciously disregarded this unrebutted evidence.

### b. PUC's, PECO's, and OCA's Position

The PUC found that the testimony of TURN's and CAUSE-PA's witnesses was unpersuasive. The witnesses testified as to their understanding over five years *after* TURN and CAUSE-PA filed their Statements in Support of the 2015 Settlement Agreement. Neither TURN nor CAUSE-PA articulated its position regarding Footnote 3 in any PUC proceeding prior to prosecuting TURN's Complaint. It was not arbitrary or capricious for the PUC to find this testimony unpersuasive.

### 2. Analysis

The PUC is the ultimate finder of fact empowered to determine the credibility of witnesses and to resolve conflicts in evidence. *Greene Township Board of Supervisors v. Pennsylvania Public Utility Commission*, 642 A.2d 541 (Pa. Cmwlth. 1994). When reviewing a decision of the PUC, an appellate court "should neither substitute its judgment for that of the PUC when substantial evidence supports the PUC's decision on a matter within the PUC's expertise, nor should it indulge in the process of weighing evidence and resolving conflicting testimony." *Lehigh Valley Transportation Services, Inc. v. Pennsylvania Public Utility Commission*, 56 A.3d 49, 56 (Pa. Cmwlth. 2012). Substantial evidence is "relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached." *Township of Exeter v. Zoning Hearing Board of Exeter Township*, 962 A.2d 653, 659 (Pa. 2009) (citation and quotation omitted). The

25

PUC's findings are conclusive where they are supported by substantial evidence. *Hess v. Pennsylvania Public Utility Commission*, 107 A.3d 246, 258 n.7 (Pa. Cmwlth. 2014).

"Review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002). Capricious disregard occurs only when the factfinder deliberately ignores relevant, competent evidence. *Id.* Where substantial evidence supports the findings, and those findings in turn support the conclusions, it should remain a rare instance where an appellate court disturbs an adjudication based on capricious disregard. *Id.* We may conclude that a factfinder capriciously disregarded competent evidence "when the unsuccessful party below has presented 'overwhelming evidence' upon which the adjudicator could have reached a contrary conclusion, and the adjudicator has not satisfactorily addressed that evidence by resolving conflicts in the evidence or making credibility determinations that are essential with regard to the evidence." *Balshy v. Pennsylvania State Police*, 988 A.2d 813, 835-36 (Pa. Cmwlth. 2010) (citation and quotation omitted). "[W]here there is strong 'critical' evidence that contradicts evidence supporting a contrary determination, the adjudicator must provide an explanation as to how it made its determination." *Id.* at 836.

Here, TURN and CAUSE-PA direct this Court to evidence that they claim supports their understanding of Footnote 3 and why it was material to their entry into the 2015 Settlement Agreement. TURN's witness Phil Lord, Executive Director of TURN at the time TURN entered the 2015 Settlement Agreement,

testified that Footnote 3 was material to TURN's agreement. Specifically, Lord testified:

> For TURN, a material term of the Settlement was the agreement that PECO's CAP [] would automatically adjust if the [PUC] changed those energy burdens. As a result, TURN's advocacy for lower energy burden targets, including in the [PUC]'s Energy Affordability proceeding, has relied upon this automatic incorporation of updated energy burdens into the PECO CAP Structure.

*Id*. at 386a. CAUSE-PA's witness, Harry Gellar, similarly testified that Footnote 3 was "an essential element in arriving at [a] settlement compromise and was relied upon by CAUSE-PA in order to address continuing unaffordability in the FCO design . . . ." *Id*. at 553a.

Although the testimony of Lord and Gellar was not rebutted, their testimony was offered at the PUC proceedings on TURN's Complaint -- more than five years *after* TURN and CAUSE-PA filed their Statements in Support of the 2015 Settlement Agreement. There is no evidence that TURN or CAUSE-PA articulated their expectation that Footnote 3 was self-executing or that the automatic adoption of the revised energy burdens by PECO was central to their support of the 2015 Settlement Agreement *prior* to entering the 2015 Settlement Agreement. The PUC attributed more evidentiary weight to the fact that TURN's and CAUSE-PA's Statements in Support of the 2015 Settlement Agreement made no mention of the importance or effect of Footnote 3.[9] PUC Opinion, 12/8/22, at 26. In fact, TURN concedes that it did not specifically cite to Footnote 3 in its Statement in Support.[10]

---

[9] Even if such notice was provided, the PUC had the authority to modify this provision to maintain the PUC's review and approval process.

[10] TURN merely referenced the PUC's CAP Policy Statement and stated:
**(Footnote continued on next page…)**

27

TURN's Brief at 23. Upon review, the PUC did not capriciously disregard this evidence, but exercised its discretion in finding this testimony unpersuasive considering the totality of the evidence.

## IV. Conclusion

Accordingly, we affirm the PUC's December 8, 2022 order.

_____
MICHAEL H. WOJCIK, Judge


Judge Wolf did not participate in the decision of this case.

> Although reference to such maximums may be referred to herein as targeting "affordability," TURN . . . continue[s] to submit that the [PUC] should undertake revision and review of this CAP Policy Statement to reduce the maximum affordability standards in order to provide bills which are actually affordable to low-income families.

R.R. at 371a; *see* TURN's Brief at 23.

28

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Tenant Union      :
Representative Network,      :
     :
         Petitioner    :
     :
       v.               : No. 10 C.D. 2023
     :
Pennsylvania Public Utility      :
Commission,      :
     :
        Respondent :

# **O R D E R**

AND NOW, this 2nd day of April, 2024, the order of the Pennsylvania Public Utility Commission, dated December 8, 2022, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge